IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| vs. | * | |
| NIMESH VIJAY DESAI, | * | CASE NO. 4:25-CR-16 (CDL) |
| Defendant. | * | |

O R D E R

After extensive colloquy with counsel during Defendant's sentencing hearing, the Court overruled the Government's objection to the calculation of the Base Offense Level in Defendant's Presentence Report ("PSR"). To avoid any misunderstanding that may have arisen from that colloquy and to clarify the Court's rationale, the Court enters this written order.

Having been at this job for over 24 years, the undersigned understands that he is bound by Eleventh Circuit precedent, even if the undersigned disagrees with it. Specifically, the Court recognizes that the Circuit's *en banc* opinion in *United States v. Dupree,* 57 F.4th 1269 (11th Cir. 2023) is presently the law in this Circuit. However, this Court finds that the Government here oversimplifies the *holding* in *Dupree*. The rigid textualist approach urged by the Government isolates two words of the applicable Sentencing Guideline in a vacuum, completely ignoring the larger context within which they fit. By doing so, the

Government argues for an interpretation that is entirely inconsistent with the intent of the Sentencing Commission when it promulgated the Guideline and the accompanying Commentary and application notes. Because the applicable Guideline and application note can be harmonized by reading them together in the context within which they were adopted, the Court finds that consideration of the application note here does not run afoul of the holding in *Dupree.* Accordingly, consistent with the Sentencing Commission's clear intent and with appropriate respect for Circuit precedent, the Court overruled the Government's objection to the calculation of the Base Offense Level in the PSR. The following discussion explains the Court's rationale more fully.

Defendant was convicted on four counts of the indictment. Three counts related to possession of controlled substances. One count involved possession of a firearm by a convicted felon. The PSR properly grouped the counts. Regarding the firearm count, the PSR calculated a Base Offense Level of 22 pursuant to U.S. Sentencing Guidelines Manual § 2K2.1. Because the offense involved a semi-automatic firearm capable of accepting a large capacity magazine and Defendant committed the offense after sustaining one felony conviction for a controlled substance offense, the PSR

designated his Base Offense Level 22. *See* PSR ¶ 31, ECF No. 69 (applying U.S. Sent'g Guidelines Manual § 2K2.1(a)(3)).[1]

The Government objected to this calculation of the Base Offense Level, arguing that it failed to take into consideration Defendant's previous felony conviction for assaulting a federal law enforcement officer. Had this conviction, along with Defendant's prior controlled substance conviction, been considered for Base Offense Level purposes, Defendant's Base Offense Level would have been 26. *See* U.S. Sent'g Guidelines Manual § 2K2.1(a)(1) (establishing base offense level 26 if (1) the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and (2) the defendant committed the offense after sustaining "at least two felony convictions of either a crime of violence or a controlled substance offense").[2] Defendant's prior conviction for assaulting a federal law enforcement officer was not considered for Base Offense Level purposes based upon the unambiguous direction in the Sentencing Commission's Commentary (application note). That Commentary advises that "for purposes of applying [the firearms base offense level] use only those felony convictions that receive criminal history points [under the

[1] It is undisputed that Defendant's offense involved a semiautomatic firearm capable of accepting a large capacity magazine and that Defendant had a prior controlled substance conviction.

[2] It is undisputed that Defendant had a prior felony conviction for assaulting a federal law enforcement officer, which would be considered a "crime of violence" for Guideline purposes.

applicable criminal history guidelines]." U.S. Sent'g Guidelines Manual § 2K2.1 cmt. n.10.

It is undisputed that Defendant's prior conviction for assaulting a federal officer did not qualify for criminal history points under the Guidelines because it was treated as part of a single sentence involving other felony offenses that did receive criminal history points. *See* U.S. Sent'g Guidelines Manual § 4A1.2(a)(2) (establishing single sentence rule to define "prior sentence" for purposes of determining criminal history category under U.S. Sent'g Guidelines Manual § 4A1.1). Therefore, to sustain the Government's objection to the Base Offense Level, the Court must ignore the Sentencing Commission's Commentary (application note) and obvious intention that such prior convictions not be considered for Base Offense Level purposes.

The Government argues that *Dupree* mandates that the Court ignore the Commission's Commentary and Application Note. Latching on to the now well accepted "textualist approach" to statutory construction, the Government contends that the Court may wander no farther than the phrase "felony conviction" in the Guideline language. It maintains that this phrase is unambiguous and thus clearly reveals the Commission's intent that "all" felony convictions involving controlled substances and crimes of violence must be considered in determining the Base Offense Level for firearm offense sentencing. It does not matter that the Guidelines

use "felony conviction" in different ways for Guideline purposes, *e.g.*, sometimes they are considered for criminal history points and sometimes they are not. According to the Government, this "context" need not be considered when two words in a sentence have clear definitions in isolation. The Court does not interpret *Dupree* to require such a rigid supposedly textualist approach.

Because the phrase "felony conviction" can have different connotations depending on the context within which it is used in the Guidelines, the Court finds that consideration of the Commission's clear statement of what it intended the phrase to mean in the context of Guideline § 2K2.1(a) is not only appropriate but necessary to ascertain the true intended meaning of the Guideline. After all, ascertaining the Commission's intent, and not the application of some rigid formulaic analytical tool in isolation, is the ultimate purpose of statutory interpretation. The "textualist approach" is simply a tool meant to help this Court in its search for that intent. Sometimes that tool effectively reveals that intent without resort to other tools. But sometimes it does not. And by using other tools, such as examining a phrase in the proper context, the Court is not engaging in the unpardonable sin of "engrafting" upon the Guideline what it thinks the Commission *should* have done; instead, it relies solely upon the Commission's own expression of what it actually thought it *had*

*done.*[3] Based on the foregoing, the Court finds that for purposes of determining the Base Offense Level in this case, the PSR correctly omitted consideration of Defendant's prior felony conviction for assaulting a federal officer.[4]

The Court ends this Order with the words of the Supreme Court, which have been expressly adopted by the Sentencing Commission: "Commentary in the *Guidelines Manual* that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline." U.S. Sentencing Commission Guidelines Manual, §1B1.7 cmt. (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Reading the Guideline here in conjunction with the applicable commentary makes clear that the PSR accurately calculated Defendant's Base Offense Level. This application violates no constitutional or statutory provision, and it is not inconsistent with the Guideline or a plainly erroneous reading of the Guideline. To apply the rigid "textualist approach" advocated

---

[3] To emphasize the point, the Court observes that the advisory Guideline here attempts to advise the Court which level of enhancement is appropriate for firearm offenders who have a certain criminal history. The Commission clearly made the policy determination that judges should only consider prior felony convictions that were assessed criminal history points when deciding which enhanced base level to apply. It is not for this Court to quarrel with that policy decision. To do so would be to impose the Court's personal policy predilections upon the Commission. To fail to follow the Commission's clear direction for calculating the advisory guideline range would arguably constitute the ultimate example of rogue, anti-textualist judging.

[4] The Court hastens to add, however, that the Court may certainly (and actually did) consider that criminal conduct, along with Defendant's other criminal conduct, in fashioning a sentence consistent with the authorized sentencing factors.

by the Government would not pass this standard. This Court does not believe that such a result was intended by the Eleventh Circuit in *Dupree* or would be approved by the Supreme Court.

IT IS SO ORDERED, this 6th day of August, 2026.

S/Clay D. Land

CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA